**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                  No. CR 17-1303 RB

SHILOH BOWYER,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Mr. Bowyer's Emergency Motion for Compassionate Release Pursuant to Section 603(B)(1) of the First Step Act, filed on January 18, 2021. (Doc. 44.) Having reviewed the submissions of the parties, the record, and the applicable law, the Court finds the motion is not well-taken and should be **DISMISSED**.

## I.    Background

On October 10, 2017, Mr. Bowyer pled guilty to two counts of an Indictment charging: (1) conspiracy to possess with intent to distribute 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1); and (2) possession with intent to distribute 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). (*See* Docs. 27–28.) On February 19, 2019, the Court sentenced Mr. Bowyer to 151 months imprisonment. (Docs. 36–37.)

Mr. Bowyer now moves the Court through counsel, pursuant to 18 U.S.C. § 3582(c)(1)(A), to reduce his sentence due to the COVID-19 pandemic. (*See* Doc. 44.) Mr. Bowyer has served approximately 52 months or 34% of his sentence. His anticipated release date is January 13, 2028. *See* Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Aug. 10, 2021).

**II.**     **Mr. Bowyer has not exhausted his administrative remedies.**

Mr. Bowyer seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which permits a sentencing court to grant such a motion where "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." Prior to the passage of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), only the Director of the Bureau of Prisons (BOP) could file a motion for compassionate release. Section 603(b) of the First Step Act now provides that a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after he has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on his behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ." 18 U.S.C. § 3582(c)(1)(A). Mr. Bowyer filed such a request, which the warden denied on August 4, 2020.[1] (*See* Doc. 44-A.) The Government argues that because the warden denied the request, Mr. Bowyer was then required to file an administrative appeal before his request can be considered exhausted. (*See* Doc. 45 at 9–10 (citing 18 U.S.C. § 3582(c)(1)(A); 28 C.F.R. §§ 524.15, 571.61, 571.63).)

At issue here is how to interpret the statutory language regarding "the lapse of 30 days from the receipt of" an inmate's request for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Mr. Bowyer argues that "the lapse of 30 days" language applies regardless of the warden's response to a request for compassionate release. (*See* Doc. 46 at 2–3.) That is, Mr. Bowyer believes that the exhaustion requirement is fulfilled 30 days after a warden receives an inmate's compassionate release request, notwithstanding the failure of the warden to timely respond to the request. (*See*

---

[1] It is unclear when Mr. Bowyer filed his request, and he does not argue that more than 30 days passed from the time of his request through the date of the warden's denial. (*See* Docs. 44; 46.) Accordingly, the Court assumes for purposes of this motion that the warden issued the denial within 30 days of Mr. Bowyer's request.

*id.*) The Government contends that the language offers an alternative to the normal exhaustion procedures.[2] (*See* Doc. 45 at 9–10.) When an inmate submits a compassionate release request and the warden timely responds to it (within 30 days), the Government argues that the inmate must appeal the denial using the process outlined in 28 C.F.R. §§ 571.60–571.64 before filing a motion with the Court. (*See id.* at 9.) Alternatively, if the warden fails to respond within 30 days—*i.e.*, after "the lapse of 30 days"—the inmate's request is considered exhausted, and the inmate may directly petition the Court. (*See id.* at 9–10.)

Mr. Bowyer argues that "allowing a motion after [30] days reflects a clear legislative intent to expedite Motions by preventing the warden from simply sitting on compassionate release motions indefinitely." (Doc. 46 at 3.) But that is not a proper reflection of the Government's position. Under the Government's reading of the regulations, an inmate's request is considered exhausted if 30 days lapse from the warden's receipt of a request for compassionate release and the warden fails to respond. (Doc. 45 at 10.)

The regulations do not make clear the contours of the exhaustion requirement, and courts across the country are divided on the issue. "Some courts . . . hold that there is sufficient exhaustion as long as 30 days lapse from the date the warden receives a request for compassionate release, period." *United States v. Risley*, No. 1:12-CR-0363 AWI, 2020 WL 4748513, at *4 (E.D. Cal. Aug. 17, 2020) (gathering cases). "[O]ther Courts find that the 'lapse of 30 days' language creates in essence a limited futility exception." *Id.* (gathering cases). These courts find, like the United

---

[2] This represents a change in the Government's position from its previous responses to motions for compassionate relief before the undersigned. In the past, the Government has stipulated to exhaustion where the inmate requested compassionate relief from the warden and the warden denied the request even *before* 30 days had passed. *See, e.g.*, *United States v. Lovelace*, 15cr4112, Response to Mot. at *3 (D.N.M. June 23, 2020) (U.S. "conced[ing] that Defendant has exhausted her administrative remedies" where she filed a request for compassionate release with the warden on April 8, 2020, and the warden denied the request on the next day); *United States v. Williams*, 19cr0027, Response to Mot. at *9 (D.N.M. Jan. 4, 2021) (U.S. agreeing that defendant exhausted administrative remedies where she filed request for reduction with warden on July 9, 2020, and warden denied request seven days later).

States argues, that if the warden fails to respond within 30 days of the inmate's request, the inmate may immediately petition the court. *See id.* If the warden does respond within 30 days, "the 30 day lapse language has no application and the defendant must follow the otherwise applicable administrative procedures and appeal the denial." *Id.* As one court explained:

> Although definitions of "lapse" include "a passage of time," other definitions include "a slight error typically due to forgetfulness or inattention," and "the termination of a right or privilege through neglect to exercise it within some limit of time." *Lapse*, Merriam-Webster.com Dictionary, Merriam-Webster (accessed May 4, 2020), *available at* https://www.merriam-webster.com/dictionary/lapse. Applying the first definition would substantially undermine one of the goals of an exhaustion requirement—protecting agency authority, expertise, and the opportunity to correct mistakes—"as it [would] allow[ ] a defendant to come to court before the agency has rendered a final decision" and foreclose higher-level BOP review of a request. [*United States v.*] *Haney*, 454 F. Supp. 3d [316,] 320–21 [(S.D.N.Y. 2020)]. The first reading would also—in many cases—render the statute's provision regarding full exhaustion of administrative remedies meaningless, as defendants like Ng would forego appealing a warden's denial of their compassionate release request if the 30-day period was nearing an end. Indeed, given the BOP's regulations regarding its deadlines for considering compassionate release requests, it is unlikely in the normal case that a defendant could exhaust his administrative remedies within 30 days. If Congress desired to so fundamentally change the compassionate release process by circumventing the BOP's full administrative review, Congress could have used clearer language, as it did elsewhere in the First Step Act. For example, in the very next subsection of the statute, Congress implemented a fourteen day deadline for the BOP to process a terminally ill defendant's request for compassionate release. See 18 U.S.C. § 3582(d)(2)(A)(iv) ("The Bureau of Prisons shall . . . in the case of a defendant diagnosed with a terminal illness . . . not later than 14 days of receipt of a request for a sentence reduction . . . , process the request.") Although I recognize that the First Step Act introduced several progressive reforms to the federal prison system, including "improving application of compassionate release," 164 Cong. Rec. H10346-04, H10362 (daily ed. Dec. 20, 2018), and "expedit[ing] compassionate release applications," 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018), I cannot conclude that the Act went so far as to render meaningless the BOP's consideration of such applications in the first instance without specific language evidencing such a Congressional intent.

*United States v. Seng*, 459 F. Supp. 3d 527, 537 (S.D.N.Y. 2020), *rev'd on reconsideration on other grounds*, No. S5 15-CR-706 (VSB), 2021 WL 961749 (S.D.N.Y. Mar. 15, 2021).

In the District of New Mexico, at least three judges have found that the Government's

interpretation of the statute is correct. *See, e.g.*, *United States v. Olsson*, No. 13-CR-2051 KWR, 2020 WL 6869979, at *1 (D.N.M. Nov. 23, 2020); *United States v. Llantada*, No. CR 14-832 KG, 2020 WL 6822827, at *2 (D.N.M. Nov. 20, 2020); *United States v. Valenzuela*, No. 15-CR-01460-WJ, 2020 WL 5439803, at *1 (D.N.M. Sept. 10, 2020). Two judges have disagreed with the Government's position. *See United States v. Bell*, No. CR 00-1425 JAP, 2020 WL 5505505, at *3 (D.N.M. Sept. 10, 2020); *United States v. Garcia*, No. 17-CR-02242-MV, 2021 WL 258238, at *3 (D.N.M. Jan. 26, 2021). In *Garcia*, United States District Judge Martha Vázquez questioned in dicta, "Why include the 30 day wait period if its only function is to prompt the warden to respond faster but does not restrict the overall timeframe of an appeal to the BOP?" *See* 2021 WL 258238, at *3 (quoting *United States v. Carter*, 469 F. Supp. 3d 583, 587 (S.D. W. Va. 2020)). Mr. Bowyer argues something similar, noting that while the Director of the BOP must respond to an appeal within 20 days of receipt, the regulation does not provide a similar "time limit for a rejection by the General Counsel or the Regional Director." (Doc. 46 at 3.) *See also* 28 C.F.R. § 542.15(a). Yet, this is not the situation that Mr. Bowyer faces, and the Court need not consider it at this juncture.

Judge Vázquez also opined in *Garcia* that "while the Tenth Circuit has not squarely addressed this issue, its discussion of the lapse provision in a recent unpublished decision suggests that it would likely be sympathetic to the straightforward reading Mr. Garcia advances." 2021 WL 258238, at *3 (citing *United States v. Springer*, 820 F. Appx. 788, 791 (10th Cir. July 15, 2020) (stating that the exhaustion requirement is satisfied if an inmate has requested that the BOP move for compassionate release on their behalf and "thirty days have passed since the 'warden of the [inmate]'s facility' received a compassionate-release request from the inmate")). The undersigned is not convinced that *Springer* compels the court to adopt Mr. Bowyer's interpretation, however, as the Tenth Circuit did not directly consider the question at issue in this case. *See United States*

*v. Harris*, 505 F. Supp. 3d 1152, 1156–57 (D. Kan. 2020) (considering *Springer* in the context of deciding exhaustion). Finally, the defendant in *Garcia* received the warden's response *after* the 30-day time limit; thus, although Judge Vázquez offered a reasoned opinion, the issue was not squarely before the court. *See Garcia*, *See* 2021 WL 258238, at *3 (noting that the warden responded after 33 days of the inmate's request).

In sum, the Court finds that under the circumstances here, where Mr. Bowyer concedes that he received a response from the warden within 30 days and failed to pursue the available administrative appeal process, the Court finds that the request is not exhausted and must be dismissed.

Even if Mr. Bowyer had exhausted his administrative remedies, the Court would deny his motion for at least two reasons. First, while Tucson FCI has 133 inmates who have recovered from COVID-19, it appears that the facility has gotten the pandemic under control for the moment and currently has no positive inmate cases. *See COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 10, 2021). And second, although Mr. Bowyer has Parkinson's disease and cites to two medical studies that have "shown that infection with COVID-19 may cause an acceleration of the progression of Parkinson's Disease" and that "Parkinson's Disease results in a higher case fatality rate for COVID-19[,]" (Doc. 44 at 3 (citations omitted)), the Court finds that Mr. Bowyer does not have a medical condition that warrants compassionate release at this time. The undersigned's practice has been to rely on the CDC's website as "an evidence-based resource" in considering what underlying medical conditions are correlated with a "higher risk of developing severe outcomes of COVID-19." *See Underlying Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated May 13, 2021). As of the date of this Opinion, the CDC has

not included Parkinson's Disease as one of these conditions. *See id.* (noting that the website does not provide an exhaustive list of underlying conditions and "includes only conditions with sufficient evidence to draw conclusions"). Consequently, the Court would likely not grant the relief Mr. Bowyer seeks even if he had demonstrated exhaustion.

The undersigned recognizes and commends Mr. Bowyer for the effort he has put into his rehabilitation, as shown by the fact that he has earned his GED and other certificates while incarcerated. (*See* Docs. 46 at 6; 46-A; 46-B; 46-C.) The Court encourages Mr. Bowyer to participate in counseling and other drug abuse prevention and educational programming to improve his chances at a successful transition.

**THEREFORE,**

**IT IS ORDERED** that Mr. Bowyer's Emergency Motion for Compassionate Release Pursuant to Section 603(B)(1) of the First Step Act (Doc. 44) is **DISMISSED** for failure to exhaust.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE